Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Matthew R. Snyder (350907)
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MIGUEL ESPARZA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

REDFIN CORPORATION, a Delaware corporation d/b/a WWW.REDFIN.COM,

Defendant.

Case No. 2:25-cv-08339-JC

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT**

## INTRODUCTION

In argument before the United States Supreme Court on January 10th, 2025, America's Solicitor General called social media app TikTok a ***"grave threat to our nation***." Justice Brett Kavanaugh was even more explicit, saying "secret evidence provided by the government" showed that the Chinese government is likely using TikTok ***"to develop spies and blackmail people working in the FBI or the CIA or in the State Department.***" After a classified briefing, the Chairman of the House Committee on Homeland Security called TikTok a ***"spy balloon in your phone."***[1]

TikTok's ability to spy on Americans requires the assistance of companies like Defendant, which created an online presence at **redfin.com** (the "Website") and encourages consumers to use the website as an alternative to personal interaction. Defendant promises visitors that it will safeguard their personal information, assuring them that "***[w]e take steps to ensure that your information is treated securely.***" *See* https://www.redfin.com/about/privacy-policy (last accessed May 2025).

Defendant lied. In reality, the Website operates as a digital "trojan horse"[2] to help the Chinese government use TikTok to spy on visitors to the Website, track their journey across the web, eavesdrop on their conversations, and bombard them with targeted advertising. In words too plain to question, the California Legislature has made clear that this secret, invasive surveillance violates California law.

Plaintiff visited Defendant's Website during the statute of limitations period. Defendant secretly de-anonymized Plaintiff using electronic impulses generated from Plaintiff's device and helped TikTok track and eavesdrop on Plaintiff's personal life.

---

[1] Zach Schonfeld, **TikTok Gets Frosty Reception At Supreme Court In Fight To Stave Off Ban**. https://thehill.com/regulation/court-battles/5079608-supreme-court-tik-tok-ban/ (January 10, 2025).

[2] The National Institute of Standards and Technology defines a "trojan horse" as "A computer program that appears to have a useful function, but also has a hidden and potentially malicious function that evades security mechanisms." See https://csrc.nist.gov/glossary/term/trojan_horse (last accessed January 2025); Adonis Hoffman, TikTok Is China's Trojan Horse. https://thehill.com/opinion/technology/3694346-tiktok-is-chinas-trojan-horse/ (last accessed January 2025).

Defendant violated and continues to violate California's Trap and Trace Law, codified at California Penal Code § 638.51.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act.

2. Venue is proper Court because this case was removed from Los Angeles County Superior Court which is within this judicial district.

3. Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure Section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."

## PARTIES

4. Plaintiff is a resident and citizen of California.

5. Defendant is a technology-powered real estate company.

## FACTUAL ALLEGATIONS

**Defendant Employs the TikTok Software on its Website**

6. Defendant operates the Website and has installed on the Website spyware created by TikTok – known as a "tracking pixel" – to identify and gather detailed information about website visitors (the "TikTok Software").

7. An image of the invasive TikTok code secretly embedded on Defendant's Website can be seen here, which shows the website instantly sending communications to TikTok to add to its collection of user behavior:




8. The website instantly sends communications to TikTok when a user views the page and track page interactions. In the example below, the right side of the image shows the various TikTok scripts being run by Defendant, and the electronic impulses being sent to TikTok to add to their collection of user behavior:




9. The TikTok software serves essentially two main purposes: identifying visitors to a website, and then tracking their activity across that website.

10. Defendant allows TikTok to track the activity of its website users for one primary purpose: advertising. Defendant allows TikTok to collect the data of its website

users so that it can "match [Defendant's] website users with people on TikTok, therefore expanding audience sizes for solutions like web retargeting."[3]

11. Web retargeting is the process of using targeted online advertisements to advertise to people who have already visited Defendant's website. In other words, Defendant uses the TikTok Software to market to people who have visited its website, but opted not to purchase something.

**How the TikTok Software Identifies Defendant's Website Users**

12. The TikTok Software employs several different processes to identify the users of Defendant's website. These processes are generally known as "fingerprinting."

13. The first process is through the use of third-party cookies.

14. As TikTok itself states, "[c]ookies are small text files that help match events with people who engage with your content on TikTok and can be used to enhance measurement accuracy and ad campaign optimization."[4]

15. In simple terms, whenever a person accesses the TikTok website, TikTok loads a cookie—a miniscule text file—onto the user's web browser. The cookie contains data that TikTok can use to identify that particular user. For example, if an individual logs into their TikTok account on their browser, the cookie will contain a unique user ID that is associated with their personal TikTok account. That text file containing user IDs will remain on the user's browser for up to 13 months, if it is not deleted sooner.

16. Once TikTok loads a cookie onto a user's browser, it can then use that cookie to track them across any website that utilizes its tracking software.

17. When a user connects to a website that utilizes the TikTok Software—such as Defendant's Website—the TikTok Software runs a script that looks through the user's browser to see if there are any cookies loaded into the browser that are associated with TikTok. If it finds any such cookies, they are then re-loaded by the third-party website that is using the TikTok Software.

[3] *See* https://ads.tiktok.com/help/article/advanced-matching-web?lang=en (last visited October, 2025).

[4] https://ads.tiktok.com/help/article/using-cookies-with-tiktok-pixel?lang=en (last visited October 2025).

18. In this way, TikTok is able to directly link otherwise anonymous internet users to their personal TikTok accounts, whether they want TikTok to or not.

19. The following is an illustration of how this process works from start to finish: An individual, John Doe, decides to visit the TikTok website from his personal computer. John Doe opens his Google Chrome web browser, types in www.TikTok.com, pushes the enter key, and is taken to TikTok's website. Upon connecting to the website, TikTok loads a cookie onto John Doe's Google Chrome web browser, containing a unique ID number that it has generated for him and assigned to his computer. John Doe decides to log into his personal TikTok account, so he can rewatch some of the videos he has previously liked. Upon logging into his TikTok account, TikTok loads another cookie onto John Doe's Google Chrome web browser containing his unique TikTok user ID. After scrolling through several videos on TikTok, John Doe disconnects from the website and closes his Google Chrome Browser. Later that same day, John Doe decides to visit www.redfin.com to look for rental properties available in his area. John Doe opens his Google Chrome web browser, types in www.redfin.com, pushes the enter key, and is taken to Defendant's website. The instant John Doe connects to Defendant's website, the TikTok Software—which is installed on Defendant's website—deploys a script and looks through his Google Chrome browser to see if there are any TikTok cookies already in his browser it can use to identify him. Because John Doe visited TikTok and logged into his account earlier that same day, the TikTok Software is able to locate multiple TikTok cookies, and loads them on Defendant's website. This information is then communicated back to TikTok through the TikTok Software. Using the information contained in the cookies located by the TikTok Software (such as John Doe's unique TikTok user ID), TikTok matches the identifying information with the data contained in its database to determine the identity of the person who accessed Defendant's website. TikTok is instantaneously aware that John Doe is browsing Defendant's website.

20. The TikTok Software does not depend solely on the use of cookies to identify individuals browsing Defendant's website. Consider, for example, a user who has never accessed the TikTok website and never maintained a personal TikTok account. In this case, there would be no TikTok cookies loaded on the user's browser for the TikTok Software to identify. Is TikTok nonetheless able to identify and track this person? The answer is yes.

21. This is because the TikTok Software employs a second process to identify people who visit Defendant's website. It collects data transmitted from the user's web browser and device to Defendant's server, and then attempts to match that data against its own database to identify the user.

22. More specifically, the TikTok Software collects a user's IP address, device user-agent strings, device make, device model, operating system type, browser type, and unique browser ID.[5] It does so by collecting metadata communicated between a user's web browser and Defendant's server, known as HTTP headers.

23. When a user connects to Defendant's website, its server automatically sends a request to the user's web browser for various types of information. Among them are the IP address of the user's device, the user's device user-agent strings, the make and model of the user's device, the type of operating system the user's device utilizes, what browser the user is utilizing, and the unique browser ID for the user's web browser. The user's web browser responds by sending a package of data, called an HTTP header, containing the requested information.

24. Once the response is sent, the TikTok Software collects the metadata that it can use to identify the user. Then, the TikTok Software compares this collected data to a database maintained by TikTok to find any matching entries. Successfully matching metadata collected by the TikTok Software with data in TikTok's database allows TikTok to track a user across multiple webpages. If TikTok's database does not have a

[5] *See* https://ads.tiktok.com/help/article/tiktok-pixel?lang=en (last visited October 2025).

matching entry, the TikTok Software will create a new entry and log the metadata for future matching as described above.

25. The following is an illustration of how this process works from start to finish: an individual, John Doe, decides to visit an ecommerce website that uses the TikTok pixel, from his personal computer. John Doe opens his Google Chrome web browser, types in the web address for the ecommerce site, pushes the enter key, and is taken to the ecommerce website. Upon connecting to the website, the website's server requests metadata from John Doe's Google Chrome web browser. John Doe's Google Chrome web browser sends a package of metadata back to the server, which includes his IP address, his computer's user-agent strings, the make and model of John Doe's personal computer, the type of operating system John Doe's computer uses, data indicating he is using Google Chrome, and the unique ID associated with John Doe's Google Chrome browser. This metadata is collected by the TikTok software, and compared against TikTok's database. Suppose that TikTok does not have any entries that match the metadata collected by the TikTok Software. The TikTok Software then creates a new entry in the database including all of the metadata captured by the TikTok Software, and assigns it a unique identifying number. Later that same day, John Doe decides to visit www.redfin.com for information regarding rental properties available in his area. John Doe opens his Google Chrome web browser, types in www.redfin.com, pushes the enter key, and is taken to Defendant's website. The instant John Doe connects to Defendant's website, Defendant's server requests metadata from John Doe's Google Chrome web browser. John Doe's Google Chrome web browser sends a package of metadata back to Defendant's server, which includes his IP address, his computer's user-agent strings, the make and model of John Doe's personal computer, the type of operating system John Doe's computer uses, data indicating he is using Google Chrome, and the unique ID associated with John Doe's Google Chrome browser. The TikTok Software captures this metadata and compares it against TikTok's database. This time, the data matches an entry already in the database—the entry created earlier the same day. TikTok matches

these data entries and records that John Doe has visited Defendant's website. TikTok is instantaneously aware that John Doe is browsing Defendant's website.

26. Both of the processes described in paragraphs 14 through 25 occur simultaneously.

27. Both of the processes described in paragraph 14 through 25 occur instantaneously upon connecting to Defendant's website, before any privacy policy or cookie banner is presented to the user.

**The TikTok Software Tracks a User's Activity Across Defendant's Website**

28. Once a user has been identified, the TikTok Software tracks their entire interaction on Defendant's website.

29. The TikTok Software tracks what pages on a website a user visits, what buttons they click on, what products they select, what products they purchase (if any), and what ads they click on (if any).

30. The TikTok Software then catalogs this information in its database to keep a record of a user's website behavior.

31. This data is then used to push targeted advertising to website users based on their online browsing activity, allowing Defendant to publish ads on TikTok for particular products by telling TikTok to push a specific advertisement to any individual that it has a record of clicking on the webpage for that product.

32. For example, consider if John Doe searched for one bedroom apartments that were dog friendly, but opted not to submit an inquiry regarding any properties on Defendant's website upon his first visit to Defendant's Website. TikTok, after having identified John Doe as described above, would keep a record of John Doe having visited those particular pages on Defendant's Website. If Defendant opted to run an ad campaign through TikTok targeting any people who looked for, but did not inquire about, their one bedroom apartments that are dog friendly listed on its website, TikTok would then use its record of John Doe having visited the Website to push Defendant's ads to him the next time he logs in to TikTok.

**Plaintiff's Experience with Defendant's Website**

33. On or around October 24, 2024, Plaintiff was browsing the internet searching for information related to local rentals, while physically in California.

34. On or around October 24, 2024, through his online browsing Plaintiff visited Defendant's website at https://redfin.com/ to explore rentals listed on its website that were available in his area.

35. Plaintiff alleges, upon information and belief, that the entire time that Plaintiff was browsing Defendant's website, the TikTok Software that Defendant installed on its website was collecting Plaintiff's data, as described above, sharing it with TikTok, and attempting to deanonymize him.

36. Plaintiff alleges, upon information and belief, that the TikTok Software installed on Defendant's website looked for and collected cookies from Plaintiff's browser, and collected Plaintiff's IP address, device user-agent strings, the make and model of Plaintiff's device, the operating system Plaintiff's device used, the type of browser Plaintiff was using, and the unique browser ID associated with Plaintiff's browser.

37. The TikTok Software then attempted to match this data with entries in its own database to identify Plaintiff and track his browsing activity. Moreover, the TikTok Software then tracked Plaintiff's entire interaction with Defendant's Website.

38. Defendant did not obtain Plaintiff's or class members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization, nor did Defendant obtain a court order.

39. An invasion of privacy, such as this, causes a concrete harm to consumers. "Violations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598 (9th Cir. 2020). "A right to privacy encompasses the individual's control of information concerning his or her person." *Id.* (internal quotations and citations omitted). Statutes such as CIPA "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.*

40. By capturing and sharing Plaintiff's data without his consent, Defendant has invaded Plaintiff's privacy.

41. As a result of this invasion of privacy, Plaintiff has suffered an injury in fact.

42. The capturing and sharing of Plaintiff's data by Defendant constitutes an invasion of privacy. Plaintiff felt upset, disturbed, and/or violated upon learning that Defendant captured his data and shared it with TikTok. This invasion of privacy constitutes an insult to Plaintiff's dignity. Plaintiff's personal data has value, and was taken from him by Defendant and TikTok through subterfuge and deception. Defendant and TikTok provided no consideration or notice before taking Plaintiff's data, and did not obtain her consent to do so.

43. Plaintiff and class members provided Defendant with valuable information (the free collection of data used to fingerprint and de-anonymize Plaintiff and Class Members) without their consent or knowledge.

44. Defendant captures this data without consent to obtain valuable data from Plaintiff and class members. The entire purpose of CIPA is to provide California consumers with a means to pursue statutory damages for the breach of their privacy when a company records them without their knowledge. The judgment of the California Legislature indicates that the alleged violations of Plaintiff's statutory rights under CIPA constitute concrete injury in fact.

45. Thus, Plaintiff and putative class members "have provided valuable data to [Defendant] and have received no money in return." Brown v. Google LLC, No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695, at *52 (N.D. Cal. Dec. 22, 2021) (collecting cases); see also Klein v. Facebook, Inc., 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022) ("[B]y providing Facebook with their information and attention, they 'lost money or property.'").

## <u>CLASS ALLEGATIONS</u>

28. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All California citizens who visited Defendant's Website while physically in California and whose personal information was**

**shared with TikTok or other third parties by Defendant without effective and informed prior consent.**

29. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be at least fifty. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

30. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class Members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

a. Whether Defendant shared Class Members' personal information with TikTok or other third parties;

b. Whether Defendant obtain effective and informed consent to do so;

c. Whether Class Members are entitled to statutory penalties; and

d. Whether Class Members are entitled to injunctive relief.

31. TYPICALITY: As a person who visited Defendant's Website and whose personal information was shared by Defendant, Plaintiff is asserting claims that are typical of the Class.

32. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

33. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violations of the California Trap and Trace Law

### Cal. Penal Code § 638.51

34. Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

35. California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630 *et seq*.

36. CIPA was enacted to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties." CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

37. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

38. California Penal Code § 638.51 provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" § 638.51(a). No court order to install a trap and trace device via the TikTok Software was obtained by Defendant.

39. Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is solely to identify the source of the incoming electronic and wire communications to the Website.

40. Defendant did not obtain consent from Plaintiff and Class Members before using trap and trace technology to identify users of its Website, and has violated Section 638.51.

41. CIPA imposes civil liability and statutory penalties for violations of § 638.51.

42. Therefore, Plaintiff and Class Members are entitled to the relief set forth below.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the class and making all appropriate class management orders;
2. Statutory damages pursuant to CIPA;
3. Reasonable attorneys' fees and costs; and
4. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

## PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY

Dated: November 18, 2025 **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By: /s/Todd M. Friedman
Todd M. Friedman, Esq.
Attorney for Plaintiff

Filed electronically on this 18th Day of November, 2025, with:

United States District Court CM/ECF system.

Notification sent electronically on this 18th Day of November, 2025, to:

Honorable Magistrate Judge Jacqueline Chooljian
United States District Court
Central District of California

And All Counsel of Record as Recorded On The Electronic Service List

/s/ Todd M. Friedman, Esq.

TODD M. FRIEDMAN